IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

FEB 27 2025

LAURA A. AUSTIN, CLERK
BY:
DEPUTY CLERK

GENEAN S., o/b/o Z.S.,        )
A MINOR CHILD,               )
    Plaintiff               )  Civil Action No. 4:23-CV-25
                             )
v.                           )
                             )
                             )
LELAND DUDEK, Acting         )
Commissioner of Social Security,[1]  )  By:  Michael F. Urbanski
                             )  Senior United States District Judge
    Defendant               )

## MEMORANDUM OPINION

This social security disability appeal was filed by Plaintiff Genean S. (Genean) on behalf of her minor child, Z.S. The appeal was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on January 29, 2025, recommending that the court affirm the Commissioner's final decision and dismiss the case from the court's active docket. ECF No. 18. Genean has filed objections to the R&R, ECF No. 19. As discussed below, the court declines to adopt the R&R, **VACATES** the determination by the Commissioner, and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

---

[1] Leland Dudek was named Acting Commissioner of the Social Security Administration in February 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Legal Standards

## A. Objections to Magistrate Judge's Report and Recommendation

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[2] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th

---

[2] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

2

Cir. 2011) (per curiam). See also Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not

countenance a form of generalized objection to cover all issues addressed by the magistrate

judge; it contemplates that a party's objection to a magistrate judge's report be specific and

particularized, as the statute directs the district court to review only 'those portions of the

report or specified proposed findings or recommendations to which objection is made.'") Such

general objections "have the same effect as a failure to object, or as a waiver of such objection."

Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x

268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to

review an issue de novo if no objections are filed. . ..")

Nevertheless, as the court clarified in Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir.

2023), "objections need not be novel to be sufficiently specific."

> In Martin v. Duffy, 858 F.3d 239, 245–46 (4th Cir. 2017), this
> Court exemplified the specificity analysis by looking solely to
> whether the grounds for objection were clear. There, an objection
> which merely "restated all of [the] claims" was sufficiently
> specific because it "alerted the district court that [the litigant]
> believed the magistrate judge erred in recommending dismissal of
> those claims." Id. at 246. If the grounds for objection are clear,
> district court judges must consider them de novo, or else run
> afoul of both § 636(b)(1) and Article III.

If a litigant could not restate his argument to the district judge, in addition to "needlessly

curtailing litigants' access to an Article III judge, such a requirement could leave litigants with

no available arguments, as district court judges are not required to consider new arguments

posed in objections to the magistrate's recommendation." Id. at n.4.

In the absence of a specific, proper, and timely filed objection, a court reviews an R&R

only for "clear error" and need not give any explanation for adopting the R&R. Carr v.

3

Comm'r of Soc. Sec., No. 3:20-cv-00425-FDW-DSC, 2022 WL 987336, at *2 (W.D.N.C. Mar.

31, 2022) (citing Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir.

2005) and Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983)). See also Laurie D. v. Saul, No.

1:20-cv-831 (RDB/TCB), 2022 WL 1093265, at *1 (E.D. Va. Apr. 11, 2022) (quoting Lee v.

Saul, No. 2:18-cv-214, 2019 WL 3557876, at *1 (E.D. Va. Aug. 5, 2019)) ("In the event a

plaintiff's 'objections' merely restate her prior arguments, the Court 'need only review the

Report and Recommendation using a 'clear error' standard.'") Thus, in the absence of an

objection, a court need "only satisfy itself that there is no clear error on the face of the record

in order to accept the recommendation." Diamond, 416 F.3d at 315 (quoting Fed. R. Civ. P.

72 advisory committee's note).

## B. Standard of Review of Commissioner's Decision

Judicial review of disability cases is limited to determining whether substantial evidence

supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving

disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v.

Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a

de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter

v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the

record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind,

Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a

directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v.

Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less

than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401. However, even under this deferential standard, a court does not "'reflexively rubber-stamp an ALJ's findings.'" Arakas v. Comm'r. Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020) (quoting Lewis v. Berryhill, 858 F.3d 858, 870 (4th Cir. 2017)). "To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions.'" Id. (citing Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) and quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

## II. DISCUSSION

Z.S. is a minor, born on April 27, 2006. He was classified as a school-age child on December 12, 2016, the date his application was filed, and currently is an adolescent. 20 C.F.R. § 416.926a(g)(2). The administrative law judge (ALJ) found that Z.S. has the following severe impairments: attention deficit hyperactivity disorder (ADHD), bipolar disorder, generalized anxiety disorder, oppositional defiant disorder (ODD), autism spectrum disorder, mixed receptive/expressive language disorder, and primary congenital glaucoma with right eye vision loss. R. 812.

### A. Assessment of Childhood Disability Claims

When assessing a child's application for disability, the Social Security Administration engages in a three-step sequential evaluation, set out at 20 C.F.R. § 416.924. First, the adjudicator determines if the child is engaged in substantial gainful activity. If so, the child is

not disabled. If the child is not engaged in substantial gainful activity, the adjudicator next determines whether the child has an impairment or combination of impairments that is severe. If the impairment is not severe, the child is not disabled. If the child has a severe impairment, the ALJ moves on to the third step of the evaluation and reviews the claim to determine whether the child has an impairment that meets, medically equals, or functionally equals a listed impairment. If the child has such an impairment, and it meets the duration requirement, the adjudicator will find the child disabled. Id.

To find that an impairment functionally equals a listing, the adjudicator must find that the impairment results in "marked" limitation in two domains of functioning or "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The adjudicator assesses what the claimant cannot do, has difficulty doing, needs help doing, or is restricted from doing because of the impairments, assessing the interactive and cumulative effects of all the impairments, including those which are not severe. Id. When assessing functional limitations, the adjudicator looks at (1) how well the child can initiate and sustain activities, how much extra help they need, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of medications or other treatment. Id. The domains are broad areas of functioning intended to capture all of what a child can or cannot do and include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A "marked" limitation in a domain means that a claimant's impairment interferes seriously with his ability to independently initiate, sustain, or complete activities. Day-to-day

6

functioning may be seriously limited when impairments limit only one activity or when the interactive and cumulative effects of impairments limit several activities. A "marked" limitation also means a limitation that "is more than moderate" but "less than extreme" and is the equivalent of functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2).

An "extreme" limitation in a domain means an impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. Day-to-day functioning may be very seriously limited when impairments limit only one activity or when the interactive and cumulative effects of impairments limit several activities. An "extreme" limitation also means one that is "more than marked." An "extreme" limitation does not necessarily mean a total lack or loss of ability to function and is the equivalent of functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3).

### B. ALJ Findings

In assessing the domains for Z.S., the ALJ found that he had (1) a marked limitation in attending and completing tasks; (2) a less than marked limitation in acquiring and using information; (3) a less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in caring for oneself; and (6) a less than marked limitation in health and physical well-being. R. 815-824. Therefore, because he found Z.S. had only one marked limitation of a domain--attending and completing

tasks--the ALJ found Z.S. not disabled. Had the ALJ found Z.S. to have a marked limitation in two domains, he would have determined that Z.S. was disabled. 20 C.F.R. § 416.926a(a).

Genean objects to four findings by the magistrate judge: (1) The administrative law judge (ALJ) appropriately determined that Z.S. has a less than marked limitation in the domain of acquiring and using information; (2) The ALJ appropriately determined that Z.S. has a less than marked limitation in interacting and relating with others; (3) the ALJ properly considered the "overlap" between the domains of attending and completing tasks and acquiring and using information; and (4) the ALJ properly considered the testimony of Genean and Z.S. regarding Z.S.'s defiant behavior and difficulty interacting with others and his difficulties with acquiring and using information. Because the issue of whether Z.S. has a marked limitation in the domain of acquiring and using information is dispositive, the court addresses only this objection.

The ALJ assessed Z.S. as having a less than marked limitation in the domain of acquiring and using information. R. 818–19. In reaching this conclusion, the ALJ cited to the following evidence in the record:

(1) in the 2017-2018 school year, Z.S.'s final grades included one C-, one D+, and two D- grades (R. 309);

(2) although Z.S. had an Individualized Education Plan (IEP), he was following a regular Standards of Learning (SOL) curriculum (R. 1082);

(3) his 2018 IEP noted that he was able to read passages independently and answer questions about the text although he performed best on reading assignments when in a small group and when he was able to talk out loud to himself (R. 778);

(4) he was within the average range in reading, below average in spoken language, and in the poor range for math (R. 780);

(5) his math and reading skills were impacted by his ADHD characteristics (R. 1172);

8

(6) testing in 2018 showed his overall reading ability was within the poor range and he had processing weaknesses in working memory and sequential problem solving (R. 1169, 1185);

(6) testing in 2020 found deficits in sequential reasoning and working memory that impacted his education in the areas of written expression, mathematics calculation, and mathematics problem-solving skills and also indicated ADHD characteristics impacted math and written language skills (R. 1085);

(7) his 2020 IEP indicated that he repeated the sixth grade, liked math, and when allowed to use a calculator he performed on grade level for math (Id.);

(8) when Z.S. did not want to complete a math assignment, he would state that he did not know how to do something or had not been taught the material (Id.);

(9) Z.S. was noted to have the ability to read on grade level in April 2020, but did not like to read lengthy passages (Id.);

(10) his ninth-grade teacher indicated that he had extra help each day from regular and special education teachers but did not take initiative to understand math or complete any work (R. 1137);

(11) Z.S. was on grade level for reading in ninth grade, but below average in math and written language (R. 1147);

(12) his GPA in the 2021-2022 school year was 0.83 (R. 1105);

(13) at a June 2022 psychological evaluation, Z.S. had good abstract reasoning ability and fair abstract reasoning (R. 1205);[3]

(14) his 2022 IEP noted prior findings of difficulty initializing tasks and staying with tasks until completion in larger group settings, problems with multistep math problems and writing comprehension, that he needed short precise directions along with extra time or reduced problems due to problems with his attention span and distractibility, he lacked motivation in school, he had many absences, he skipped class to hang out in the bathroom and was caught vaping in the bathroom on many occasions (R. 1114);

(15) Z.S. did not complete assignments even after numerous attempts by his caseworker to meet with him after class or during classes and made excuses when his caseworker tried to provide additional assistance (Id.);

[3] This is likely a drafting error as the record cited states that Z.S. had good abstract reasoning ability and fair judgment or common sense. R. 1205.

(16) Z.S. lacked support and his mother did not attend his 2022 IEP meeting (Id.);

(17) Z.S. was going to repeat the ninth grade (R. 1203).

> After the ALJ provided this summary of the evidence, he concluded the following:

>> The record shows poor grades and a lack of motivation to complete schoolwork. The claimant has required short precise directions, extra time, and reduced assignments. Despite efforts from his case worker, the claimant was noted to make excuses to the case worker when they tried to offer additional assistance. He has repeated multiple grades. He has been provided extra help each day with regular and special education teachers, but did not take initiative to understand math or complete any work. However, the claimant has been on grade level for reading and, when he was allowed to use a calculator, he performed on grade level for math. The undersigned finds the claimant had a less than marked limitation in acquiring and using information.

R. 819.

The ALJ also stated that he gave only partial weight to the teacher evaluations in the record, because the teachers observed Z.S. in the school setting, but did not have access to the medical evidence or the full record, which the ALJ said supported his findings on the domains. R. 822-23. The ALJ also gave great weight to the opinion of state agency expert Stephen Saxby, Ph.D, who found in his initial disability determination that Z.S. had a less than marked limitation in acquiring and using information. The ALJ said that Dr. Saxby's record was supported by the longitudinal record. R. 823–24, 96–104. The ALJ also found persuasive the opinions of state agency experts Joseph Leizer, Ph.D., and Leslie Ellwood, M.D., both of whom found on reconsideration that Z.S. had a less than marked limitation in acquiring and using information. R. 824, 106–116.

### C. Magistrate Judge Findings

The magistrate judge found that the ALJ's determination that Z.S. had a less than marked limitation in acquiring and using information was supported by substantial evidence, because he examined all the evidence and offered a sufficient rationale for crediting certain evidence and discrediting other evidence. R&R, ECF No. 18 at 20 (citing Shelly C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 353 (4th Cir. 2023)). The magistrate judge also found that the ALJ explained that he gave "great weight" to the agency experts' opinions on the issue and found that their opinions were supported by the longitudinal record, and that the ALJ was entitled to rely on a non-examining source's medical opinion when it is consistent with the record. R&R, ECF No. 18 at 21–22.

The magistrate judge noted that the ALJ cited teachers' consistent opinions that Z.S. had "slight to obvious" but no "serious" or "very serious" problems functioning compared to other school-age children and "no problems" to "very serious" problems functioning compared to other adolescents who do not have impairments. Id. at 22–23. Further, the ALJ cited to the accommodations Z.S. received for his ADHD and a learning disorder and his mixed academic performance while following a regular SOL curriculum, as well as his teachers' reports that Z.S. did not take initiative, lacked motivation compared to his school-age peers who did not have impairments, frequently skipped class to hang out in the bathroom, and often made excuses when he did not want to do homework assignments or when support staff tried to give him extra help. Id. at 23.

The magistrate judge further found that the ALJ recognized that Z.S. "repeated multiple grades," but also cited evidence showing that he was generally on grade level for

11

reading and math, when he was allowed to use a calculator. Id. (citing SSR 09-3p, 2009 WL 396025, at *6 (Feb. 17, 2009)). In addition, the magistrate judge credited the ALJ with finding that Z.S.'s math and language skills were impacted by his ADHD characteristics and said he cited ample evidence supporting a logical conclusion that this impact fell short of markedly limiting Z.S.'s age-appropriate functioning in the domain. Id. at 23–24. Finally, the magistrate judge noted the ALJ's observation that one ninth-grade teacher who indicated that Z.S. had "very serious" problems acquiring and using information had further explained that Z.S. did not take initiative to understand math or complete any work even though regular and special education teachers gave him extra help each day. Id. at 24. The magistrate judge concluded that, "[o]verall, the ALJ reasonably concluded that Z.S.'s severe [medically determinable impairments] caused 'less than marked' limitation in this domain." Id.

### D. Objections

Genean argues that the magistrate judge erred when he concluded that the ALJ's determination that Z.S. had a less than marked limitation in acquiring and using information was supported by substantial evidence. She asserts that although the ALJ summarized most of the evidence in the record, he did not explain how the evidence supported his determination. The court appreciates the thorough and detailed analysis by the magistrate judge, but having reviewed the record, the ALJ's determination, and the R&R, the court nevertheless sustains Genean's objection that the ALJ's assessment of Z.S.'s functioning in acquiring and using information is not supported by substantial evidence.

### (1) Providing a Sufficient Explanation

It is well-established that although the court does not re-weigh the evidence considered by the ALJ or substitute its judgment for that of the ALJ, an ALJ must nevertheless provide an explanation for how he arrived at his conclusion. Boulden v. O'Malley, No. 24-1414, 2025 WL 48337, at *3 (4th Cir. 2025) (per curiam). The court must not be left to guess about how the ALJ reached the determination. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Rather, the ALJ must build an accurate and logical bridge from the evidence to his conclusions. Bouldin, 2025 WL 48337 at *3 (citing Arakas, 983 F.3d at 95). In this case, the ALJ did not "build the logical bridge" from much of the evidence he cited to his conclusion that Z.S. has a less than marked limitation in his ability to acquire and use information.

For example, the ALJ cited to evidence that testing of Z.S. found deficits in sequential reasoning and working memory that impacted his education in the areas of written expression, mathematics calculation, and mathematics problem-solving skills and indicated ADHD characteristics impacted math and written language skills. R. 818, 1085. Without an explanation by the ALJ of how this evidence supports a finding that Z.S. has a less than marked impairment in this domain, the court is at a loss as to how this evidence supports the conclusion.

The same is true of the ALJ's citation to the record showing that Z.S.'s 2022 IEP noted prior findings of difficulty initializing tasks and staying with tasks until completion in larger group settings, problems with multistep math problems and writing comprehension, and that he needed short precise directions along with extra time or reduced problems due to problems with his attention span and distractibility, R. 818, 1114. Nor did the ALJ explain how testing in 2018 showed that showed Z.S.'s overall reading ability was within the poor range and that

13

he had processing weaknesses in working memory and sequential problem solving led to the conclusion that he has a less than marked impairment in the domain. R. 818, 1169, 1185. Similarly, in the absence of an explanation by the ALJ, his citation to evidence that Z.S. repeated the sixth grade, R. 818, 1085; that his GPA in the 2021-2022 school year was 0.83, R. 818, 1105; and that he was going to repeat the ninth grade, R. 819, 1203, does not support a finding that Z.S. has a less than marked limitation in the domain of acquiring and using information.

Because the ALJ did not "build the logical bridge" between his recitation of the evidence cited above and his conclusion that Z.S. has a less than marked limitation in the domain of acquiring and using information, the court is left to guess at how the ALJ reached the conclusion. See Mascio, 780 F.3d at 636–37 (remanding where ALJ determined what functions he believed the claimant could perform, but his opinion was lacking in the analysis needed for the court to review meaningfully those conclusions.) This lack of explanation warrants remand.

### (2) Cherry-Picking Evidence

While the ALJ is not required to cite to all the evidence in the record, he "has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Arakas, 983 F.3d at 98 (quoting Lewis v. Berryhill, 858 F.3d 858, 869 and Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)). In this case, the ALJ's choice of evidence cited in support of his conclusion could, in several instances, be described as "cherry-picking" when considered alongside the evidence he did not cite.

14

For example, the ALJ noted the comment in Z.S.'s 2018 IEP that he was able to read passages independently and answer questions about the text although he performed best on reading assignments when in a small group and when he was able to talk out loud to himself. However, the ALJ did not note the comment in the same paragraph that Z.S. needs to read a passage out loud to himself from beginning to end and if left on his own, will not read the passage but will rush through assignments, is very easily distracted, can zone off and stare blankly at his work for minutes on end, and requires lots of prompting daily to get back on track. R. 818, 778. This comment is relevant to the determination of Z.S.'s ability to acquire and use information and particularly to the ALJ's duty to assess what Z.S. cannot do, has difficulty doing, or needs help doing because of his impairment. 20 C.F.R. § 416.926a(a). The regulations direct the ALJ to determine how well Z.S. can initiate and sustain activities, how much extra help he needs, the effects of structured or supportive settings, how he functions in school and the effects of medications or other treatment. Id. Without including and assessing the limitations put on Z.S.'s ability to complete a reading assignment, the ALJ's assessment of this evidence is incomplete and does not constitute substantial evidence in support of his conclusion.

The ALJ also cited to test results showing that Z.S. was within the average range in reading, below average in spoken language, and in the poor range for math, but did not cite results of another test result on the same page that showed that Z.S.'s overall performance on another reading test was within the poor range. R. 818, 780. The ALJ should have addressed this inconsistency and his failure to do so renders his determination unsupported by substantial evidence.

15

The ALJ also cited to a paragraph in a document stating that Z.S.'s 2020 IEP indicated that he repeated the sixth grade, liked math, and when allowed to use a calculator he performed on grade level for math, but omitted a comment that Z.S.'s "specific learning disability and ADHD negatively impact his performance in all academic areas. He struggles with reading comprehension and writing due to his ADHD and not being able to focus in a large class setting … requiring much prompting daily to get him back on track. Some days he is unable to complete any assignment and others he will complete everything." R. 781, 1085. Again, without including this limitation on the comment that Z.S. liked math and could perform on grade level when using a calculator, the ALJ's assessment of the evidence falls short of the duty outlined in the regulation to assess what Z.S. cannot do, has difficulty doing, or needs help doing because of his impairment. 20 C.F.R. § 416.926a(a).

In another instance, the ALJ cited evidence showing Z.S. had the ability to read on grade level in April 2020, but did not like to read lengthy passages. However, the assessment states that Z.S. "does not like to read lengthy passages due to him drifting off and losing focus of what he was reading. He will skim over the passage and attempt to answer questions quickly so that he can draw or put his head down." R. 818, 1085 (emphasis added). The ALJ's recitation of the evidence indicates that Z.S. simply does not like to read, while the full passage adds important context—that Z.S. does not like to read lengthy passages because he cannot maintain focus.

Finally, the ALJ cited to Z.S's ninth-grade teacher's comment that he had extra help each day from regular and special education teachers and did not take initiative to understand math or complete any work, but did not point out that the same teacher checked boxes on the

16

assessment form indicating that Z.S. had a very serious problem understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, and applying problem-solving skills in class discussions. R. 818, 1137. Without citing to the other information on the form, the court must guess at whether the ALJ considered it in the context of his assessment of this domain, which runs afoul of Arakas and requires remand.

### (3) Assessment of Opinion Evidence

The ALJ stated that he fully considered the Teacher Questionnaires included in the record. R. 822. Relevant to his assessment of Z.S.'s ability to acquire and use information, Z.S.'s special education teacher and case manager found in 2016 that he had slight to obvious problems in this domain. R. 235. The same teacher again found in 2018 that Z.S. had slight to obvious problems in this domain, commenting that he only struggled when he was not on medication for focusing and that he had the potential to work independently if he could stay focused, but needed a lot of one on one or small group assistance to complete his assignments. R. 318. Another teacher in the 2017-2018 school year checked boxes indicating that Z.S. had slight to obvious problems in this domain and commented that math was a struggle. R. 792.

In October 2022, Z.S.'s ninth grade math teacher checked boxes indicating that he had an obvious to severe problem acquiring and using information and commented that he did not take initiative to understand the math or complete any work, despite having extra help each day from his regular and special education teacher. R. 1137. The same teacher commented

17

that Z.S. had many absences and often left the classroom to go to the restroom where he would stay for 20 to 60 minutes. R. 1136. His ninth grade English teacher checked boxes indicating he had no problems acquiring and using information. That teacher commented that Z.S. does not want to be in school and did not try to do his work, preferring to either sleep, or play on his computer or phone. He had plenty of support and tutoring, but did not take advantage of it. R. 1148. Z.S.'s ninth grade biology teacher found that Z.S. had no problems with acquiring and using information, but was absent or skipped class frequently. R. 1155-56.

All but one of Z.S.'s teachers checked boxes indicating that he had at least some obvious problems in acquiring and using information. The ALJ gave all the opinions only partial weight because the teachers "observed him in the school setting," but did not have access to the medical evidence or the full record. R. 822-23. This assessment is puzzling because the teachers were asked to assess Z.S.'s abilities in the classroom and were not asked to consider the medical evidence or the full record. Moreover, the ALJ did not point to evidence in the record, medical or otherwise, that conflicts with the teachers' assessments. While the ALJ is not required to give the teachers' opinions any particular weight, his explanation of why he gave them only partial weight falls short the requirement that his determination be supported by substantial evidence in the record.

The ALJ also gave great weight to the finding by the state agency expert who determined in the initial disability determination that Z.S. had a less than marked limitation in acquiring and using information, finding it was supported by the longitudinal record. This conclusion is problematic because the state agency expert offered his opinion in March 2017, R. 99–104, when Z.S. was 10 years old, but the longitudinal record covers a period through at

least December 2022, when Z.S. was 16 years old. To find that the state agency opinion was supported by the longitudinal record when the state agency expert was unable to consider more than 5 years of relevant evidence leads the court to find that this conclusion is not supported by substantial evidence.

The ALJ also found persuasive the opinions of the state agency experts on reconsideration who reached the same conclusion. R. 823–24. This opinion was given in June 2017, again without benefit of the following five years of psychological testing and assessments by Z.S.'s teachers. While it is the province of the ALJ to weigh the evidence, his finding that the state agency experts' opinions were persuasive is not supported by substantial evidence given that they were unable to consider an additional five years of evidence.

In sum, the court finds that the ALJ did not adequately explain his reason for finding that Z.S. had a less than marked limitation in his ability to acquire and use information. Accordingly, Genean's objection to the magistrate judge's finding on this issue is **SUSTAINED**.

### III. Conclusion

For the reasons stated, the court **REJECTS** in part the R&R, ECF No. 18, **SUSTAINS** in part the objections filed in this case, ECF No. 19, and **VACATES** the determination of non-disability made by the Commissioner. The court **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered:    02-27-2025

Michael F. Urbanski
Senior United States District Judge